# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**

      **Plaintiff,**

**v.**                          **Case No. 03-20126-JWL**
                                   **Case No. 07-2246-JWL**

**LARRY BURSE,**

      **Defendant.**

## MEMORANDUM AND ORDER

### I.    Background

On September 18, 2003, Mr. Larry Burse was indicted on five counts for possessing and/or distributing substances or mixtures containing a detectable amount of cocaine base. Count One alleged a quantity of five grams or more in violation of 21 U.S.C. section 841(a)(1) and (b)(1)(B)(iii), as well as 18 U.S.C. section 2. Counts 2-5 also alleged violations of 21 U.S.C. section 841(a)(1) and 18 U.S.C. section 2.  A specific quantity was not charged in those counts, so instead of a violation of section 841(b)(1)(B)(iii) as in Count One, those counts charged a violation of section 841(b)(1)(C).  On January 16, 2004, a jury found Mr. Burse guilty on all counts.  He was sentenced to 151 months imprisonment as to counts 1,2,3,4, and 5 to run concurrently to one another, 4 years supervised release as to count 1, and 3 years supervised

release as to counts 2-5 to run concurrently to one another.  The Tenth Circuit affirmed the verdict on October 6, 2005, concluding that the lower court did not abuse its discretion in admitting evidence and because the *Booker* error was harmless.  Mr. Burse filed the Motion to Vacate under 28 U.S.C. section 2255 presently before the Court on June 7, 2007.  His Motion is DENIED for the following reasons.

## II.    Legal Standard

Mr. Burse is entitled to relief only if his custody or sentence violates federal law or the Constitution.  28 U.S.C. § 2255.  The Court must first determine whether Mr. Burse has alleged specific facts that, if proven, would entitle him to relief on that basis.  If he does have a cognizable claim, then the Court must determine whether an evidentiary hearing is necessary to determine the truth of the factual allegations.  *Id.*  A court need not grant an evidentiary hearing where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.  *Arredondo v. United States*, 178 F.3d 778, 782 (6th   Cir.1999), quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir.1995).  An evidentiary hearing is necessary only when the motion, files, and record of the case cannot conclusively show that the petitioner is not entitled to relief.  § 2255.

## III.    Discussion and Analysis

## A.    Standard for Demonstrating Ineffective Assistance of Counsel

Mr. Burse's claims are all based on what he alleges was ineffective assistance of counsel, both that his trial counsel failed to object or raise issues as well as the appellate counsel failing to raise the issues on appeal.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United

2

States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. Under the *Strickland* test, a petitioner must first demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. As the one raising the challenge, it is Mr. Burse who "bears the burden of establishing that his trial counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Sallahdin v. Mullin*, 380 F.3d 1242, 1247-48 (10th Cir.2004) (quoting *Strickland*, 466 U.S. at 687).

If the first prong is satisfied, the Court then examines the second prong, which requires the defendant to "show that counsel's deficient performance prejudiced the defense...." *Le v. Mullin*, 311 F.3d 1002, 1024-25 (10th Cir.2002). To succeed, Mr. Burse must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1025 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir.2002). The Court "may address the performance and prejudice components in any order, but need not address both if [Mr. Burse] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir.1998). Conclusory allegations, without factual basis, are insufficient to support claims of ineffective assistance of counsel. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir.1994).

**B.     Trial and appellate counsel provided constitutionally adequate representation.**

*1.     The Court had subject matter jurisdiction for Counts 2-5.*

Mr. Burse argues the Court did not have subject matter jurisdiction because no quantity

was charged in those Counts 2-5.[1] Chapter 18, section 3231, United States Code, gives the Court subject matter jurisdiction over "all offenses against the laws of the United States." Because the Indictment alleged violations of a federal statute, 21 U.S.C. § 841, the Court had subject matter jurisdiction. Even if there was a defect, "defects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). The argument is without merit, so counsel was not ineffective for failing to raise it.

2.      *Mr. Burse's conviction was not obtained in violation of Article X of the U.S. Constitution or 21 U.S.C. section 903.*

Mr. Burse cites to chapter 21, section 903, United States Code, to make his argument that Congress has assigned controlled substance violations to the states except where there is conflict with the federal law.

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, *unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.*

21 U.S.C. § 903 (emphasis added). He argues that based upon the emphasized language the Government should have to identify a positive conflict with Kansas's Uniform Controlled Substances Act to show it did not violate section 903 by prosecuting him in the federal system. No reasonable interpretation of that statute supports Mr. Burse's argument that Congress

---

[1]The alleged issues surrounding the fact that no quantities were charged in Counts 2-5, some of which were raised in conjunction with this claim, are discussed and rejected in subsequent sections.

4

intended the federal courts to have jurisdiction over these cases only when there were conflicts between the federal and state statutes. "A plain reading of the statute shows that concurrent jurisdiction with the states over drug offenses was intended" and does not deprive the federal government from criminalizing drug crimes proscribed by states. *See United States v. Berry*, 1994 WL 326044, *2 (D. Kan. 1994) (denying defendant's claim that federal court did not have jurisdiction to try him because Kansas had passed the Uniform Controlled Substances Act). Even if the State could have prosecuted Mr. Burse, the federal Government also had authority to do so.

3.      *The Court had personal jurisdiction over Mr. Burse.*

Mr. Burse argued that because he was not a "regulated person,"[2] the Court did not have personal jurisdiction over him. In a criminal case, a district court has personal jurisdiction over

---

[2]To the extent Mr. Burse is claiming that an element of the crime was not satisfied or that the Court did not have subject matter jurisdiction over him because he is not a regulated person, the statutory language under which he was convicted shows the argument is without merit. This Court agrees with the analysis in a New York federal district court decision, analyzing a similar issue.

> Nothing in the language of § 841 . . . indicates that the statutes under which [the defendant] was convicted appl[ies] only to regulated persons. Section 841(a)(1) provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for *any person* knowingly or intentionally to manufacture, distribute, or dispense a controlled substance." (emphasis added).

> [The defendant's] argument that he is exempt from § 841 . . . is drawn from the "except as authorized by this subchapter" language in § 841(a). Rather than restricting the application of the law to all but regulated persons, however, the phrase makes clear that a subset of persons whose activities are monitored by the government may distribute certain controlled substances under limited circumstances. Anyone who is not a registered or regulated person within the meaning of the statute is subject to the blanket prohibition in § 841. . .

*United States v. Rodriguez*, 2004 WL 102750 (S.D.N.Y. 2004) (unpublished).

any party who appears before it.  *Wilkin v. United States*, 2007 WL 2317426 (D. Utah August 7, 2007), citing *Boyd v. Meachum*, 77 F.3d 60, (2d Cir.1996); *United States v. Lussier*, 929 F.2d 25, 27 (1st Cir.1991); *United States v. Stuart*, 689 F.2d 759, 762 (8th Cir.1982); *United States v. Warren*, 610 F.2d 680, 684 n. 8 (9th Cir.1980).   Mr. Burse was indicted and brought before the Court, including at his trial, so this argument is without merit.

4.      *The Equal Protection Clause was not violated when the Government did not prosecute a man arrested with Mr. Burse for conduct related to Count One.*

Mr. Burse claims the  Equal Protection Clause ("EPC") was violated when his co-defendant was not prosecuted even though he was arrested for the same conduct predicating Count One of the indictment.  The EPC prohibits the Government from prosecuting based on "an unjustifiable standard such as race, religion, or other arbitrary classification."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996), quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962). However, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation."  *Oyler*, 368 U.S. at 456; *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) ("Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.").  The Supreme Court has held that where "it was not stated that the [prosecutorial] selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. . . . grounds supporting a finding of a denial of equal protection were not alleged."  *Oyler*, 368 U.S. at 456 ; *see also  Moss v. Hornig*, 314 F.2d 89 (2d Cir. 1963)

(explaining that testimony that other similarly situated stores were not prosecuted was not evidence of an EPC violation). Because Mr. Burse did not allege the prosecutor discriminated between Mr. Burse and the man arrested with him on the basis of an unconstitutional distinction, there are no grounds to find that Mr. Burse's prosecution offended the EPC.

5. *Mr. Burse was not prosecuted selectively where he was "handed over" by the state to the Federal Government for prosecution.*

"A defendant claiming selective prosecution must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Deberry*, 430 F.3d 1294 (10th Cir. 2005) (quotation omitted). The Tenth Circuit has held that where there is no showing of prosecutorial vindictiveness or an arbitrary classification based on an unjustifiable standard such as sex, race, or religion, there is no legitimate basis for a selective prosecution claim just because the Government decided to prosecute the defendant under a federal, rather than a state, statute. *United States v. Cook*, 949 F.2d 289 (10th Cir.1991). Again, Mr. Burse provides no statement that the prosecution was based upon a discriminatory purpose or had a discriminatory effect. The mere fact that he potentially violated both state and federal law but was prosecuted in the federal system does not show vindictiveness or an arbitrary classification necessary to state a claim for selective prosecution. This claim fails.

6. *The jury instructions did not impermissibly affect the jury verdict.*

   a. *Mr. Burse is not entitled to resentencing because the Court read "(b)(1)(C)"*

*instead of "(b)(1)(B)" in jury instruction No. 8 as applicable to Count One.*[3]

Mr. Burse claims that because the Court read that the Indictment charged him, under Count One, for a violation of "Section 841(a)(1) and (b)(1)*(C),*" rather than "Section 841(a)(1) and (b)(1)*(B)*" as the Indictment states, the Court erred in sentencing him under Section 841(b)(1)(B). He claims that because the jury was instructed that he violated subsection (C), that is the subsection he should be sentenced under rather than (B), which has a harsher sentence. The trial transcript does indicate that the incorrect section was read in open court when referencing Count One. In Instruction No. 10, however, the Court went on to state, "In order to sustain its burden of proof. . . [for] Count 1 of the indictment, the Government must prove the following three essential elements beyond a reasonable doubt: First the defendant, Larry Burse, possessed 5 grams or more of a mixture and substance containing a detectable amount of cocaine base. . .". Thus, the Court made clear that the quantity must be proven for Count One, which is the main difference for the jury to consider between section 841(b)(1)(B) and (b)(1)(C). The Court also indicated, as evidenced by the trial transcript, that it had "prepared copies of the instructions for each of you [the jury members] and I am going to ask Ms. Tourtillot to pass those out to you now." The copy of the jury instructions provided the indictment language with the correct subsection 841(b)(1)(B) .[4] Thus, Mr. Burse cannot now claim that he was prejudiced

---

[3]Mr. Burse references Instruction Number 7 for this claim and the next claim, but it is obvious that he is writing about the language actually found in Instruction Number 8.

[4]The Government provided, as attachments to its response, copies of several of the jury instructions, and Mr. Burse did not contest their accuracy. This one at issue contains the indictment language, and the indictment itself lists "841(b)(1)(B)" under Count One.

by his counsel's failure to object to the misreading of one letter and the subsequent sentencing under section 841(b)(1)(B), when the rest of the instructions were correctly read and even specified the quantity as an essential element needed to establish a violation of section 841(b)(1)(B) and guilt as to Count One. *See United States v. Davis*, 55 F.3d 517, 520 (10th Cir. 1995) ("We find it significant, therefore, that the Indictment was included in the jury instructions, and that several copies of the jury instructions were given to the jury before deliberations began. We conclude that Jury Instruction No. 23 was not erroneous.")

    b.    *Instruction No. 8 did not constructively amend the indictment.*

This claim is related to the immediately preceding claim, based upon the misreading of one subsection's letter. "'An indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment.' *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir.), *cert. denied*, 488 U.S. 932, (1988). The specific inquiry is whether the jury was permitted to convict the defendant upon 'a set of facts distinctly different from that set forth in the indictment.'" *Hunter v. New Mexico*, 916 F.2d 595, 599 (10th Cir. 1990). "To rise to the level of a constructive amendment, the amendment must effectively alter the substance of the indictment." *United States v. Galbraith*, 20 F.3d 1054, 1058 (10th Cir. 1994). First, Mr. Burse cannot prove that the misreading of one letter altered the substance of the indictment. Also, he does not allege there was any evidence presented at trial, outside the one letter that was misread during the jury instructions, that raised the possibility that he was convicted for an offense not charged in the indictment. Furthermore, "[t]he jury instructions, read in their entirety, clearly

9

required the jury to" find that Mr. Burse possessed 5 grams or more of a mixture and substance containing a detectable amount of cocaine base. *See Davis*, 55 F.3d at 521. Thus, Mr. Burse's claim that the indictment was constructively amended is without merit, and therefore, his counsel was not unreasonable for failing to raise this issue.

    c.    *Mr. Burse's claims that Instruction No. 12 incorrectly did not give any definition of cocaine base and should not have used cocaine base and cocaine crack interchangeably are without merit.*

Construing his claim liberally, Mr. Burse claims that his counsel was ineffective for failing to propose a jury instruction or for objecting to the Court not utilizing an instruction on the definition of cocaine base. Throughout the instructions, however, the court referenced "crack cocaine" after using the term "cocaine base," indicating the terms were synonymous in this context, and thereby defining "cocaine base."[5] Therefore, Mr. Burse's claim is contradicted by the record and is without merit.

Mr. Burse further claims, however, that cocaine base and crack cocaine are distinct terms. This is contrary to the interpretation of "cocaine base" by many courts that have determined that term includes "crack cocaine." *See e.g.*, *United States v. Pinto*, 905 F.2d 47 (4th Cir. 1990)

---

[5]In addition to the multiple references to "crack cocaine" when discussing "cocaine base" in the jury instructions, there were also several statements throughout the trial that explained this. At the beginning of the trial, the Court explained "cocaine base [] is sometimes referred to as crack cocaine, and [] is a controlled substance." Furthermore, Ms. Keller, Mr. Rankin, and Mr. Riddle, Government witnesses, all testified that cocaine base is commonly referred to as crack cocaine.

(cocaine base includes cocaine freebase, commonly referred to as crack); *United States v. Williams*, 876 F.2d 1521 (11th Cir. 1989) (failure of statute to define "cocaine base" did not render it unconstitutionally vague because it was clear that such term referred to "crack" cocaine).  The Tenth Circuit has held that "our cases have recognized that as a matter of law, '[c]ocaine base ... as used in the federal statute [ § 841(a) ], includes crack.'" *United States v. Ellis*, 193 Fed.Appx. 773, 2006 WL 2411461 (10th Cir. 2006), quoting *United States v. McIntyre*, 997 F.2d 687, 709, n.33 (10th Cir.1993).  Consequently, Mr. Burse's claim is without merit.

      d.      *Jury Instruction Number 27 properly stated that the jury is not to consider the punishment, despite Mr. Burse's contention that the jury should have determined the degree of the sentence.*

Instruction Number 27 reads, "The punishment provided by law for the offenses charged is a matter exclusively within the province of the court and may not be considered by the jury in any way in arriving at a verdict as to the guilt or innocence of the defendant."  Mr. Burse argues that this instruction prevented the jury from determining the degree of the sentence for Counts 2-5, an element of the offense, and was contradictory to *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  While it is unclear on what reasoning from *Apprendi* Mr. Burse bases this claim,[6] it is clear that this argument is directly contrary to Supreme Court precedent.  "It is well

---

[6]If Mr. Burse is alleging that the amount of punishment in Counts 2-5 should have been determined by the jury but could not because no quantity was alleged, that argument is rejected both by the reasoning of this section, Part III.B.6.d, and Part III.B.6.e, *infra*.

11

established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994), quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975). Thus, Mr. Burse's argument that the jury should have determined his sentence is without merit, and his counsel was not ineffective for failing to raise such a claim.

     e.     *Section 841(b)(1)(C) is applicable as charged to Counts 2-5, and Instruction No. 16's lack of lack of a quantity element in Counts 2-5 did not violate the Apprendi precedent.*[7]

The indictment charged, in Counts 2-5 that related to four different dates of activity, that Mr. Burse "knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine base ("crack cocaine"), a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2." He first claims that 21 U.S.C. 841(b)(1)(C) is inapplicable because it excludes cocaine base by stating "except as provided in subparagraphs" 841(b)(1)(A) and (b)(1)(B), which both include the  cocaine mixture for which he was charged. Furthermore, he alleges, because there are no quantities alleged that meet the "threshold" amounts in section 841(b)(1)(A) and (b)(1)(B), the Court impermissibly instructed the jury that only a "detectable amount" need be proven.

Mr. Burse misinterprets the statute. For Counts 2-5 he was indicted and convicted under

---

[7]Part of this argument was alleged with his previously discussed challenge to subject matter jurisdiction but, construing his motion liberally, is addressed here.

sections 841(a) and (b)(1)(C).  The latter refers to the penalty to be imposed in "the case of a controlled substance in schedule . . . II," which includes cocaine base, where it does not meet the requirements related to quantity of (A) or (B).  Section 841(b)(1)(C) does not exclude penalizing for distribution of any drugs referenced in (A) or (B) but rather imposes a different penalty range for a charge of indeterminate quantities, whereas (A) and (B) provide for enhanced sentences based on the quantity of controlled substance involved in the violation.  *United States v. Rojas-Mendoza*, 2001 WL 10245 (10th Cir. 2001) ("[S]ection 841(b)(1)(C). . .applies to distribution of a controlled substance without regard to quantity enhancements.").

In *United States v. Deninno*, 29 F.3d 572 (10th Cir. 1994), the defendant made a similar argument.  He argued the jury should have to find that he possessed 1.8 liters of a substance containing a detectable amount of methamphetamine, as opposed to the jury instruction given, which stated that the "evidence. . .need not establish the amount or quantity of controlled substance."  The Tenth Circuit determined the "argument merits little discussion," citing *United States v. Poole*, 929 F.2d 1476, 1483 (10th Cir. 1991) as dispositive.

> [A] specific determination of the amount of a controlled substance possessed by the defendant is not required for a conviction under 21 U.S.C. § 841(a)(1).  The defendant need only possess any measurable quantity of a controlled substance under circumstances which establish his intent to distribute the substance. The quantity of a substance possessed by the defendant becomes relevant only in computing a base offense level under the sentencing guidelines.

*Poole*, 929 at 1483 (10th Cir. 1991).  Overall, specific quantities are not needed for an indictment or conviction under sections 841(a) and (b)(1)(C), both of which apply to indeterminate amounts, rather than a specific quantity as an element.

Furthermore, this case law is not affected by *Apprendi* as applied to Mr. Burse's case. He was indicted, convicted, and sentenced for Counts 2-5 under section 841(a) and (b)(1)(C), which do not require that a quantity be proven, as previously discussed. Therefore, even though *Apprendi* requires that any "fact" that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, here there is no "fact" because quantity was not used to enhance Mr. Burse's sentence under section 841(a) and (b)(1)(C).[8]  *Cf. United States v. Singleton*, 52 Fed.Appx. 456, 2002 WL 31716636 (10th Cir. 2002) ("After *Apprendi*, *when drug quantity is used* to enhance a sentence beyond the statutory maximum, the amount must be charged in an indictment and proven to a jury beyond a reasonable doubt." (Emphasis added)).  Mr. Burse's sentence was not increased by a fact not proven by the jury, so *Apprendi* is inapplicable.  Moreover, Mr. Burse was sentenced to 151 months, which is within the 20 year maximum allowed under section 841(b)(1)(C). "Because

---

[8]To draw a distinction between section 841(b)(1)(A)-(B) and 841(b)(1)(C) as applied to *Apprendi*, the Court turns to language in *United States v. Jones*, 235 F.3d 1231 (10th Cir. 2000). In *Jones*, the court held, "We conclude the quantity of drugs involved in a violation of § 841 is an essential element of the offense if that fact exposes the defendant to a heightened maximum sentence under § 841(b)(1)(A) or (B). A district court may not impose a sentence in excess of the maximum set forth in 21 U.S.C. § 841(b)(1)(C) unless the benchmark quantity of cocaine base for an enhanced penalty is alleged in the indictment in addition to being submitted to the jury and proven beyond a reasonable doubt."  While the quantity required in 841(b)(1)(A)-(B) is a fact that must be proven by a jury, there is no such quantity in section 841(b)(1)(C). *See id.* (explaining that the defendant was properly indicted and convicted of the offenses of distributing and possessing with intent to distribute *an unspecified quantity* of cocaine base under 21 U.S.C. § 841(b)(1)(C) but also noting he should have been sentenced within the range provided by that same subsection). Therefore, any sentence within the range of section 841(b)(1)(C) does not require a quantity to be alleged in an indictment or proven by a jury beyond a reasonable doubt.

the statutory maximum for an indeterminate quantity of cocaine is 240 months, 21 U.S.C. § 841, his sentence does not violate *Apprendi*." *United States v. Sherman*, 262 F.3d 784, 792 (8th Cir. 2001); *see also United States v. Thompson*, 237 F.3d 1258, 1261-62 (10th Cir.2001).

      f.     *Instruction No. 28, given at the same time as all other original instructions, was not impermissibly coercive.*

Mr. Burse argues that the Allen charge given at the same time as the rest of the jury instructions coercively and unconstitutionally induced the jury to disregard the jury's option to declare they were hung. He alleges the instruction violated his right to a fair trial. "[W]hether an Allen instruction was erroneously given [is evaluated] on a case-by-case basis with a view towards determining whether the instruction had a coercive effect on the jury." *United States v. Rodriguez-Mejia*, 20 F.3d 1090, 1091 (10th Cir.1994). To determine whether the Allen charge was coercive, the Court must evaluate: (1) the language of the instruction; (2) its incorporation with other instructions; and (3) the timing of the instruction, "for example, whether given before the jury has commenced deliberations and whether given before the jury has reached an impasse or deadlock." *United States v. Porter*, 881 F.2d 878, 888 (10th Cir.1989). Mr. Burse points to the following language in Instruction No. 28 to allege that the jury was coerced:

> Your verdict in this case must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> If you fail to reach a verdict, the parties may be put to the expense of another trial and will once again have to endure the mental and emotional strain of trial. If the case is retried, a future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to a more competent jury. There is no reason to believe that there will be more or clearer evidence produced at a

future trial.

This Court concludes that there is no evidence that the jury was impermissibly coerced. First, the language included in this charge has been approved by the Tenth Circuit. The second paragraph beginning "If you fail. . ." is identical to language of an instruction deemed "proper" by the Tench Circuit in *United States v. McElhiney*, 275 F.3d 928, 941-42, 941 n.12 (10th Cir. 2001).

As to the second factor, "incorporation with other instructions," the Tenth Circuit has explained that the instruction should incorporate cautionary language ''(1) that no juror should relinquish his or her conscientiously held convictions simply to secure a verdict and (2) that every individual juror should reconsider his or her views, whether in the majority or in the minority.'' *McElhiney*, 275 F.3d at 949. In the same instruction that Mr. Burse challenges, the Court stated:

> It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The Court, therefore, encouraged all jurors, not just those who ended up in the minority, to re-examine their views and instructed them not to surrender their individual conviction just because of another juror or to return a verdict. *See id.* ("The fact that this charge was not directed specifically at jurors holding the minority view further reduces the possibility of coercion.").

16

Therefore, language to the same effect as suggested by the *McElhiney* case is present. Additionally, there should be ''a reminder to the jury of the burden of proof.'' *Id.* Instructions 21-23, also given before the jury commenced deliberations, instructed the jury that the Government had the burden of proof to establish each element beyond a reasonable doubt; the burden of proof was given within the instructions.   When reading the Allen instructions with the other instruction language, there is no evidence of coercion.

As to the last factor, "[t]he preferred rule of procedure is to give an Allen instruction at the same time as other instructions." *United States v. Rodriquez-Mejia*, 20 F.3d 1090, 1091 (10th Cir. 1994).   "In this position, the Allen instruction is less likely to be coercive because (1) it does not stand out or receive particular emphasis and (2) it is given before the jury has reached a deadlock." *McElhiney*, 275 F.3d at 942.   The instruction in Mr. Burse's case was given at the same time as the other instructions before the jury commenced deliberations, and therefore, once again there is no evidence of coercion.   After evaluating all these factors, this Court concludes that Mr. Burse's attorney was not unreasonable in failing to object to this instruction because his claim that it was coercive is baseless.

7.    *Mr. Burse is not entitled to resentencing.*

Mr. Burse alleges that he is entitled to resentencing under *Booker* because the indictment did not allege a quantity of cocaine base for Counts 2-5.   As previously discussed in Part III.B.6.e, the statutory subsections under which he was indicted and convicted for Counts 2-5, sections 841(a) and (b)(1)(C) do not have a quantity element, and Mr. Burse was sentenced within the statutory range that does not require that quantity be established.   Therefore, there was

no judge-found fact that increased Mr. Burse's sentence beyond the maximum authorized by the jury's verdict, so there was no constitutional *Booker* error based upon a "missing" quantity. Accordingly, Mr. Burse's counsel was not ineffective for failing to raise this issue.

8.     *Mr. Burse was not sentenced based on impermissible double counting.*

Mr. Burse claims that he was illegally sentenced because the base offense level was acquired by counting quantities of drugs that were the bases of other counts, thereby constituting an impermissible double count.  A review of the Presentence Investigation Report ("PIR"), particularly paragraph 32, reveals that the base offense level was determined pursuant to U.S.S.G. §3D1.2(d).  Under this section, the applicable offense level to a group of counts is the offense level corresponding to the aggregated quantity, the purpose of which is to avoid double counting.  U.S.S.G. §3D1.2(d), n.4.  Here, the 28.33 grams that resulted in a base offense level of 28 was aggregated from the five counts of which Mr. Burse was found guilty, and none of the amounts was entered into the calculation twice.  The PIR shows that conduct related to count one revealed 22.81 grams of cocaine base, count two related to .82 grams of cocaine base, count three related to .94 grams, count four related to .91 grams, and count five related to 2.85 grams, giving a total quantity of 28.33 grams.

Mr. Burse has not shown that the same aspect of his conduct has factored into his sentence in two separate ways, so he has not made a showing of double counting.  *See, e.g., United States v. Gibson*, 409 F.3d 325 (6th Cir. 2006) ("Double counting occurs where precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." (citations omitted)).  The Court did not double count simply by aggregating relevant conduct and

the corresponding quantity, but instead followed Guideline provisions intended to avoid double counting.  Any claim of ineffective assistance of counsel on this basis is denied because this claim has no merit.

9.      *The obstruction of justice enhancement issue was previously asserted and disposed of on direct appeal, so this Court declines to review the claim under section 2255.*

Mr. Burse claims that the obstruction of justice enhancement was determined without any evidence or facts found by a jury, so the two point enhancement should be struck, resulting in resentencing.  This issue Mr. Burse now raises in his § 2255 motion was previously asserted on direct appeal and was decided against him on the basis that the sentence remained within the Guideline range without the effect of the contested enhancement. This Court finds no basis to revisit that issue. "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to Section 2255." *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir.1989); *see also United States v. Warner*, 23 F.3d 287, 291 (10th Cir.1994). Defendant does not cite any new law which applies that would justify another examination of the merits of this issue.  The claim is denied.

10.     *Appellate counsel was not per se ineffective when he did not ask for transcripts pertaining to jury selection, opening statements, and sentencing.*

The allegation that appellate counsel did not have transcripts for jury selection or opening statements is contradicted by the record.  Volume One of the trial transcript includes both of these, and the transcript was part of the record on appeal.  As to the sentencing, Mr. Lickteig represented Mr. Burse and was present at that hearing.  It is reasonable for Mr. Lickteig as

appellate counsel not to order a hearing transcript, when he was present and had first-hand knowledge of that hearing.  Also, even a brief overview of the decision on direct appeal shows that sentencing issues were not ignored by counsel on appeal.   Furthermore, Mr. Burse has not identified what matters in the transcript would have made a difference in the outcome of his appeal.  Therefore, he failed to demonstrate the prejudice necessary to prevail on a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687; *see also, e.g.*, *United States v. Ogletree*, 2006 WL 2850052 (M.D. Ala.2006) (denying ineffective assistance of appellate counsel claim for failure to review the entire transcript of trial proceedings because no prejudice shown); *Sheppard v. United States*, 2006 WL 322489 (W.D. Mich.2006) ("Movant asserts that defense counsel was ineffective when she failed to request state transcripts . . . Movant's vague allegations fail to demonstrate that counsel was ineffective or that he was prejudiced in any way by counsel's conduct.").

11.     *Mr. Burse is not entitled to free copies of transcripts or leave to amend his Motion.*

Mr. Burse, within his section 2255 Motion, requests transcripts "including but not limited to" jury selection, opening statements, and the sentencing hearing.  The Court addresses the three transcripts specifically requested.  As previously stated the jury selection and opening statements are in Volume One of the Trial Transcript, which were prepared in response to Mr. Burse's notice of appeal.  Thus, he already had access to those and is not entitled to free copies from this Court because, even though the transcripts already exist, he must meet the requirements of 28

20

U.S.C. section 753(f).[9]   Similarly, Mr. Burse is not entitled to a transcript of the sentencing hearing because he has not met the statutory requirements.

"Section 753(f) is the exclusive provision governing requests by indigent prisoners for free transcripts, whether or not the transcripts already exist." *Sistrunk v. United States*, 992 F.2d 258, 260 (10th Cir.1993). "Conclusory allegations that a defendant was denied effective assistance of counsel, without more, do not satisfy the requirements of § 753(f)." *Id.* at 259; *see also Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir.1992) (no right to a free transcript simply to search for error in the record); *United States v. Hughes*, 2005 WL 2989274 (D. Kan. 2005) ("A "naked assertion . . . without supporting factual allegations does not satisfy the requirements of § 753(f)."). Mr. Burse only alleged that the issues will pertain to the transcript but provides no basis for what these issues will be, so his request is denied.

Similarly, his request for leave to amend his motion is also unsupported.   A motion to amend a section 2255 motion is governed by Federal Rule of Civil Procedure 15, just as a motion to amend a complaint.  See Fed.R.Civ.P. 1 ("These rules govern the procedure in the United States district courts in all suits of a civil nature...."). "In the absence of any apparent or declared reason-such as undue delay, . . . futility of amendment, etc.-the leave sought should, as

---

[9]Section 753(f) provides in relevant part:

Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit of appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal.

the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "[A] court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason." *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997).  Mr. Burse provides no basis for what claim(s) he would set forth in his amendment besides that they "will []pertain to the transcripts." With no reasoning given, granting leave would be futile.  His request to amend his motion is denied.

## IV.    Conclusion

Mr. Burse's claims are all without merit.  His counsels' alleged failures to raise objections and/or issues, therefore, did not fall below the standard of effective counsel required by the Constitution.  There is no basis to grant an evidentiary hearing or grant the section 2255 motion on the merits.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Burse's Motion to Vacate under Section 2255 is DENIED.

**IT IS SO ORDERED.**

Dated this 18th  day of October, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge